FILED
CLERK, U.S. DISTRICT COURT

AUG - 2 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2005 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 05- 744 |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 2314: Interstate |
| REZA BAHRAM TABATABAI,<br>    aka Ben Tabatabai,<br>    aka Robert Bajio,<br>EDMOND MASJEDI,<br>    aka Eddie Masjedi,<br>    aka Edmund Masjedi,<br>    aka Ryan Newman,<br>TOURAJ BENSHIAN,<br>    aka David Benshian,<br>    aka Jason Buckey,<br>MASOUD RAHMANI,<br>    aka Masoud Ramani,<br>    aka Mike Rhamani,<br>MASOUD SABET,<br>    aka Mo Ramon, | Transportation of Fraudulently Obtained Property; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i): Money Laundering; 18 U.S.C. § 2: Causing an Act to be Done] |
| Defendants. | |

The Grand Jury charges:



AUG -3

1        COUNT ONE

2        [18 U.S.C. § 371]

3        (Conspiracy)

4    INTRODUCTION

5        1.    At all times relevant to this Indictment:

6            a.    Impaq Micro Enterprises Inc. ("Impaq Micro") was

7    a business located at 5730 Oakbrook Parkway, #145, Norcross,

8    Georgia, that bought and sold electronic equipment and

9    computers.  Impaq Micro began operations in or about 1992.  The

10   original owners of Impaq Micro sold the business to new owners,

11   including the named defendants in this indictment, in or about

12   May 2004.  Impaq Micro ceased all operations in or about August

13   2004.

14           b.    Defendant REZA BAHRAM TABATABAI, also known as

15   ("aka") Ben Tabatabai, aka Robert Bajio (hereinafter

16   "TABATABAI") was involved in negotiating the terms of the May

17   2004 purchase of Impaq Micro, and was subsequently involved in

18   all aspects of its operation.

19           c.    Defendant EDMOND MASJEDI, aka EDDIE MASJEDI, aka

20   EDMUND MASJEDI, aka RYAN NEWMAN (hereinafter "MASJEDI")

21   provided the financing for and assisted in negotiating the

22   terms of the May 2004 purchase of Impaq Micro, was subsequently

23   involved in the operation of Impaq Micro, and sold and stored

24   the merchandise obtained from victim companies.

25           d.    Defendant TOURAJ BENSHIAN, aka DAVID BENSHIAN,

26   aka JASON BUCKEY (hereinafter "BENSHIAN") provided the

27   financing for and assisted in negotiating the terms of the May

28

2

1   2004 purchase of Impaq Micro, was subsequently involved in the

2   operation of Impaq Micro, and sold and stored the merchandise

3   obtained from victim companies.

4           e.    Defendant MASOUD RAHMANI, aka MASOUD RAMANI, aka

5   MIKE RHAMANI (hereinafter "RAHMANI") was a signatory on the

6   bank account for Impaq Micro and a number of other bank

7   accounts relevant to this indictment, and was involved in the

8   operation of Impaq Micro.

9           f.    Defendant MASOUD SABET, aka MO RAMON

10  (hereinafter "SABET") assisted in the May 2004 purchase of

11  Impaq Micro and subsequently ran the daily operations of Impaq

12  Micro.

13          g.    Good Investments was a company created by

14  members of the conspiracy.  The name of this company was used

15  by defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET

16  (hereinafter collectively referred to as "defendants") to

17  receive and store merchandise obtained by them on Impaq Micro's

18  credit.  The bank account of this company was used by

19  defendants to receive money from Impaq Micro, and was used to

20  deposit money and cashier's checks obtained from the sale of

21  the merchandise.

22          h.    Highland International was a company created by

23  members of the conspiracy.  Money deposited into the bank

24  account of this company was subsequently transferred through

25  multiple bank accounts, held in the names of other individuals

26  and businesses, and was ultimately used to purchase Impaq

27  Micro.  The signatories on the Highland International bank

28

3

account were defendants MASJEDI and BENSHIAN.

i.   Majik Company was a company created by members of the conspiracy.  Money that originated from the Highland International bank account was deposited into the bank account of this company, was wire transferred to Georgia, and was used to purchase Impaq Micro.  The signatory on the bank account of this company was an unindicted co-conspirator.

j.   The victim companies were all wholesale or retail businesses in the computer or electronics industry that extended credit to Impaq Micro, and sold computers or electronic equipment to Impaq Micro on credit (hereinafter the "victim companies").  The victim companies were located throughout the United States, including in Alabama, Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, New York, Pennsylvania, and Texas.

THE OBJECTS OF THE CONSPIRACY

2.   Beginning on a date unknown to the Grand Jury and continuing to September 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, knowingly, willfully, and unlawfully combined, conspired, and agreed to commit the following offenses against the United States:

a.   To commit mail fraud by devising, intending to devise, and participating in a scheme to defraud the victim companies of money, and to obtain money and property from the victim companies by means of false and fraudulent pretenses,

representations, and promises, and the concealment of material facts, and causing items to be sent through the United States mail in furtherance of the scheme, in violation of Title 18, United States Code, Section 1341.

b.    To commit wire fraud by devising, intending to devise, and participating in a scheme to defraud the victim companies of money, and to obtain money and property from the victim companies by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts, and causing signs, signals, and sounds to be transmitted by means of wire communication in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

c.    To obtain merchandise through fraudulent means, by devising, intending to devise, and participating in a scheme to defraud the victim companies of money, and to obtain money and property from the victim companies by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts, and for the purpose of executing and concealing the scheme to defraud, transported and caused to be transported in interstate commerce, property having a value of $5,000 or more, in violation of Title 18, United States Code, Section 2314.

<u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

3.  Defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, carried out the fraudulent scheme in the following manner:

1          a.    Defendants TABATABAI, MASJEDI, BENSHIAN,
2    RAHMANI, and SABET would identify an established company and
3    would attempt to purchase that company.  Defendants would later
4    agree to purchase the company known as Impaq Micro.

5          b.    Defendants TABATABAI, RAHMANI, BENSHIAN,
6    MASJEDI, and SABET would use aliases when dealing with the
7    owners of Impaq Micro, the broker involved with the sale of
8    Impaq Micro, the victim companies, the trucking companies that
9    transported the merchandise, the storage facility that housed
10   the merchandise, and the businesses that ultimately purchased
11   the merchandise.

12         c.    Defendant TABATABAI would have a co-conspirator
13   contact the broker to express interest in purchasing Impaq
14   Micro.  Defendant TABATABAI would send, or would instruct a co-
15   conspirator to send, the broker documents negotiating the deal
16   to purchase Impaq Micro.

17         d.    Defendants BENSHIAN and MASJEDI would travel
18   from California to Georgia to examine Impaq Micro's business
19   records, claiming that they were conducting a due diligence
20   review of the business.  While in Georgia, defendant BENSHIAN
21   would use the false name Jason Buckey, and defendant MASJEDI
22   would use the false name Ryan Newman.  Defendants BENSHIAN and
23   MASJEDI would insist, as a condition for purchasing Impaq
24   Micro, that the seller of the business not inform any of the
25   victim companies that Impaq Micro was being sold to new owners.

26         e.    Defendant TABATABAI would inform, or would
27   instruct a co-conspirator to inform, the broker that the

28

1  contract to purchase Impaq Micro had to provide in writing that

2  the seller of Impaq Micro not inform its vendors that the

3  business was being sold, and also had to provide that the new

4  owners of Impaq Micro be substituted in as the signatories on

5  the pre-existing bank account of Impaq Micro.

6        f.    Defendants BENSHIAN and MASJEDI would provide

7  approximately $240,000 to purchase and operate Impaq Micro.

8  Defendants TABATABAI, BENSHIAN, MASJEDI, and RAHMANI would

9  instruct other co-conspirators to transfer, or cause others to

10 wire transfer, money from California to Georgia to purchase

11 Impaq Micro.

12       g.    In or about May 2004, defendants TABATABAI,

13 BENSHIAN, MASJEDI, and SABET, and others known and unknown to

14 the Grand Jury, would travel to the State of Georgia in order

15 to sign documents and to complete the purchase of Impaq Micro.

16 While in Georgia, defendant BENSHIAN would continue to use the

17 false name Jason Buckey, defendant MASJEDI would continue to

18 use the false name Ryan Newman, defendant TABATABAI would use

19 the false name Robert Bajio, and defendant SABET would use the

20 false name Mo Ramon.

21       h.    Using the name of an unindicted co-conspirator,

22 defendants TABATABAI, BENSHIAN, MASJEDI, and SABET would

23 purchase Impaq Micro.  Following their successful purchase of

24 Impaq Micro, defendant SABET would remain in Georgia to operate

25 the business.

26       i.    Defendant RAHMANI would become the signatory on

27 the Impaq Micro bank account and would thereafter sign all of

28

1  the Impaq Micro checks issued on that account.

2        j.  Defendants TABATABAI, MASJEDI, BENSHIAN,

3  RAHMANI, and SABET would contact, or would cause others to

4  contact, the existing vendors of Impaq Micro and attempt to

5  increase the amount of credit available to the business.

6  Defendants would also contact, or would cause others to

7  contact, vendors that had not yet extended credit to Impaq

8  Micro and would submit credit applications containing documents

9  to support the requests for credit, including financial

10  statements.  At the time that the credit applications were

11  submitted, defendants did not intend to pay the victim

12  companies for all the merchandise that they would purchase on

13  credit.

14        k.  Defendants TABATABAI, MASJEDI, BENSHIAN,

15  RAHMANI, and SABET would order, or cause others to order,

16  merchandise on credit from the victim companies.  Defendants

17  sometimes would pay for the first few purchases made from the

18  victim companies.  After having established a record of paying

19  for the purchases, defendants would seek an increased line of

20  credit.

21        l.  Defendant RAHMANI would transfer, or would cause

22  others to transfer, money from the Good Investments bank

23  account into the Impaq Micro bank account.  This money would be

24  used to operate Impaq Micro, to pay some victim companies for

25  the initial purchases of merchandise, and to make it appear

26  that the Impaq Micro bank account had significant funds making

27  the business worthy of large credit lines.

28

1          m.    Defendants TABATABAI, MASJEDI, BENSHIAN,

2    RAHMANI, and SABET would cause the victim companies to mail the

3    merchandise ordered on Impaq Micro's credit through private

4    carriers, including Federal Express.  Defendants would also

5    cause the victim companies to ship merchandise using interstate

6    trucking companies.  In many instances, the merchandise ordered

7    on Impaq Micro's credit would be delivered to a warehouse in or

8    about Los Angeles, California.

9          n.    Beginning in or about July 2004, defendants

10   TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET would place,

11   or cause others to place, orders for large amounts of expensive

12   merchandise, including computers, computer-related equipment,

13   and plasma televisions, on credit.  At the time they placed

14   these orders, defendants did not intend to pay for the

15   merchandise.  Once they received these merchandise orders,

16   defendants would not pay for them.

17         o.    On some occasions, defendants TABATABAI,

18   MASJEDI, BENSHIAN, RAHMANI, and SABET would mail or deliver, or

19   cause others to mail or deliver, to the victim companies a

20   post-dated check for the outstanding balances due.  These post-

21   dated checks would "bounce" due to insufficient funds being

22   held in the Impaq Micro account.

23         p.    Defendants TABATABAI, MASJEDI, BENSHIAN,

24   RAHMANI, and SABET would initially store the merchandise they

25   obtained from the victim companies on Impaq Micro's credit at

26   warehouses, including one in Los Angeles, California, and later

27   would sell the merchandise.  When selling the Impaq Micro

28

9

merchandise, defendants would insist on payment in cash or in cashier's checks.  Money from the sale of the Impaq Micro merchandise would then be deposited into bank accounts that were controlled by defendants.

q.    After purchasing a large volume of merchandise on credit, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET would abandon Impaq Micro, and would fail to pay the victim companies for the merchandise they obtained valued at approximately $3 million.

OVERT ACTS

4.    On or about the dates listed below, in furtherance of the conspiracy and to carry out the objects of the conspiracy, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California and elsewhere:

a.    On November 17, 2003, defendant TABATABAI and an unindicted co-conspirator caused a document entitled "Confidentiality and Non-Disclosure Agreement" to be sent to the broker for Impaq Micro.

b.    On December 3, 2003, defendants MASJEDI and BENSHIAN participated in a conference call with the broker for Impaq Micro.

c.    On December 23, 2003, defendant TABATABAI and an unindicted co-conspirator caused a document to be sent to the Impaq Micro broker, offering $235,000 to purchase Impaq Micro.

d.    In December 2003, defendant BENSHIAN traveled

1  from Los Angeles International Airport to Atlanta, Georgia, to

2  conduct due diligence for the purchase of Impaq Micro.

3        e.   In December 2003, defendant MASJEDI traveled

4  from Los Angeles International Airport to Atlanta, Georgia, in

5  order to conduct due diligence for the purchase of Impaq Micro.

6        f.   On January 13, 2004, defendant TABATABAI and an

7  unindicted co-conspirator caused a document to be sent to the

8  Impaq Micro broker stating that "Robert Bajio" would be

9  involved in the negotiations to purchase Impaq Micro.

10        g.   On February 10, 2004, defendant TABATABAI and an

11  unindicted co-conspirator received the final agreed deal

12  structure for the purchase of Impaq Micro.

13        h.   On March 1, 2004, defendant TABATABAI and an

14  unindicted co-conspirator sent the Impaq Micro broker a

15  document indicating that Robert Bajio was the representative

16  for the purchaser.

17        i.   On March 4, 2004, defendant TABATABAI and an

18  unindicted co-conspirator received a document regarding the

19  Asset Purchase Agreement for Impaq Micro.

20        j.   On March 9, 2004, defendant TABATABAI and an

21  unindicted co-conspirator sent the Impaq Micro broker documents

22  entitled "Asset Purchase Agreement" and "Attachment to

23  Contract," which stated that they wanted to take over the pre-

24  existing Impaq Micro bank account, and that vendors were not to

25  be told about the change in Impaq Micro ownership.

26        k.   On March 22, 2004, defendant TABATABAI

27  instructed an unindicted co-conspirator to open a bank account

28

using the business name Majik Company.

l.   On March 31, 2004, an unindicted co-conspirator made an offer on Impaq Micro and provided the broker with a deposit to secure the offer.

m.   On May 6, 2004, defendant TABATABAI contacted the broker and stated that defendants would be traveling to Atlanta, Georgia, to close the Impaq Micro deal.

n.   On May 11, 2004, defendant BENSHIAN traveled from Los Angeles International Airport to Atlanta, Georgia, to assist in the purchase of Impaq Micro.

o.   On May 11, 2004, defendant MASJEDI traveled from Los Angeles International Airport to Atlanta, Georgia, in order to assist in the purchase of Impaq Micro.

p.   On May 17, 2004, defendant RAHMANI went to Center Bank with an unindicted co-conspirator in order to obtain a cashier's check.

q.   On May 18, 2004, defendant TABATABAI traveled from Los Angeles International Airport to Atlanta, Georgia in order to purchase Impaq Micro.

r.   On June 13, 2004, defendant TABATABAI traveled from Los Angeles International Airport to Atlanta, Georgia in order to change the signatory on the Impaq Micro bank account.

s.   On June 13, 2004, defendant RAHMANI traveled from Los Angeles International Airport to Atlanta, Georgia in order to change the signatory on the Impaq Micro bank account.

t.   In June 2004, defendants TABATABAI, MASJEDI and BENSHIAN met with an unindicted co-conspirator in Beverly Hills

12

1    and discussed whether they would be dividing profits of the

2    Impaq Micro fraud with the unindicted co-conspirator.

3            u.   On July 13, 2004, defendant BENSHIAN sent a

4    facsimile to LACNY, a warehouse in the Los Angeles area, to

5    pick up merchandise from Max Group Inc., located in the City of

6    Industry, California.

7            v.   On August 13, 2004, defendants BENSHIAN and

8    MASJEDI provided authorization for merchandise from CDW

9    Computer Centers to be released to a trucking company.

10           w.   On August 18, 2004, defendants BENSHIAN and

11   MASJEDI provided authorization for merchandise from CDW

12   Computer Centers to be released to a trucking company.

13           x.   In or about September 2004, defendants

14   TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET abandoned

15   Impaq Micro and failed to return the telephone calls of the

16   victim companies.

17

18

19

20

21

22

23

24

25

26

27

28

COUNTS TWO through EIGHT

[18 U.S.C. §§ 2314, 2]

(Interstate Transportation of Fraudulently Obtained Goods)

5.    The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

6.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, having devised, intended to devise, and participated in the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and the concealment of material facts, for the purpose of executing and concealing the above-described scheme to defraud, transported and caused to be transported in interstate commerce the following property having a value of $5,000 or more:

| COUNT | DATE | ITEM TRANSPORTED |
|-------|------|------------------|
| TWO | 7/27/04 | 3 NEC Plasma 61" televisions, valued at $29,697, sent from Active Light, in Seattle, Washington, to Impaq Micro in Los Angeles, California. |
| THREE | 7/30/04 | 15 Sony Plasma 42" televisions, valued at $52,980, sent from Electrograph in Hauppauge, New York, to Impaq Micro in Los Angeles, California. |
| FOUR | 7/30/04 | 3 NEC Plasma televisions, valued at $30,195, sent from Electrograph in Hauppauge, New York, to Impaq Micro in Los Angeles, California. |

| FIVE | 7/30/04 | 4 Plasma televisions, valued at $19,560, sent from Electrograph in Hauppauge, New York, to Impaq Micro in Los Angeles, California. |
|------|---------|----------------------------------------------------------------------------------------------------------------------------------|
| SIX | 8/13/04 | 27 Panasonic plasma televisions, valued at approximately $95,823, sent from Active Light, in Poulsbo, Washington, to Impaq Micro in Los Angeles, California. |
| SEVEN | 8/18/04 | 15 Toshiba Notebook computers, valued at $25,125, sent from CDW, in Vernon Hills, Illinois, to Impaq Micro in Los Angeles, California. |
| EIGHT | 8/19/04 | 150 Toshiba Notebook computers, valued at $236,250, sent from Option Source, Inc. in Longwood, Florida, to Impaq Micro in Los Angeles, California. |

15

COUNTS NINE through FOURTEEN

[18 U.S.C. §§ 1341, 2]

(Mail Fraud)

7.    The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

8.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, having devised, intended to devise, and participated in the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and the concealment of material facts, for the purpose of executing the above-described scheme to defraud, placed and caused to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service or by a private and commercial interstate carrier, the following materials:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| NINE | 12/31/03 | Letter confirming the offer to purchase Impaq Micro from Walden Businesses, Inc. in Atlanta, Georgia, to Mike Majidi in Encino, California. |
| TEN | 1/15/04 | Letter describing the terms of the sale of Impaq Micro from Walden Businesses, Inc. in Atlanta, Georgia, to Mike Majidi in Encino, California. |
| ELEVEN | 2/10/04 | Letter describing the final terms of the sale of Impaq Micro, from Walden Businesses, Inc. in Atlanta, Georgia, to Mike Majidi in Encino, California. |

16

| TWELVE | 7/14/04 | Computer equipment valued at approximately $20,570, sent from Ingram Micro in Mira Loma, California, to Impaq Micro in Norcross, Georgia. |
| THIRTEEN | 8/13/04 | 6 Toshiba Notebook computers, valued at $10,050, sent from CDW, in Vernon Hills, Illinois, to Impaq Micro in Los Angeles, California. |
| FOURTEEN | 8/13/04 | 9 Toshiba Notebook computers, valued at $15,075, sent from CDW, in Vernon Hills, Illinois, to Impaq Micro in Los Angeles, California. |

COUNTS FIFTEEN through TWENTY-TWO

[18 U.S.C. §§ 1343, 2]

(Wire Fraud)

9.   The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

10.   On or about the dates set forth below, in the Central District of California, and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, having devised, intended to devise, and participated in the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and the concealment of material facts, for the purpose of executing the above-described scheme to defraud, willfully caused the transmission of the following by means of interstate wire communication:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FIFTEEN | 11/17/03 | A facsimile entitled "Confidentiality and Non-Disclosure Agreement" sent from Mike Majidi and Robert Bajio in California to Walden Businesses, Inc. in Atlanta, Georgia. |
| SIXTEEN | 12/23/03 | A facsimile offering $235,000 to purchase Impaq Micro sent from Mike Majidi and Robert Bajio in California to Walden Businesses, Inc. in Atlanta, Georgia. |
| SEVENTEEN | 1/13/04 | A facsimile stating Robert Bajio would be negotiating the purchase Impaq Micro sent from Mike Majidi and Robert Bajio in California to Walden Businesses, Inc. in Atlanta, Georgia. |

| EIGHTEEN | 3/9/04 | A facsimile containing an asset purchase agreement, with an attachment to the contract, sent from Mike Majidi in California, to Walden Businesses, Inc. in Atlanta, Georgia. |
|---|---|---|
| NINETEEN | 3/10/04 | A facsimile responding to proposed contract terms, sent from Walden Businesses, Inc. in Atlanta, Georgia to Mike Majidi and Robert Bajio in California. |
| TWENTY | 5/11/04 | A facsimile regarding due diligence sent from Walden Businesses, Inc. in Atlanta, Georgia, to Mike Majidi and Robert Bajio in California. |
| TWENTY-ONE | 8/19/04 | A facsimile requesting payment for merchandise delivered, sent from Amptron International, Inc., in City of Industry, California, to Impaq Micro in Norcross, Georgia. |
| TWENTY-TWO | 8/20/04 | A facsimile requesting payment for merchandise delivered, sent from Amptron International, Inc., in City of Industry, California, to Impaq Micro in Norcross, Georgia. |

COUNT TWENTY-THREE

[18 U.S.C. §§ 1956(a) and (h)]

(Conspiracy to Launder Money)

INTRODUCTION

11.   The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

THE OBJECTS OF THE CONSPIRACY

12.   Beginning on a date unknown to the Grand Jury and continuing to in or about September 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, knowingly and unlawfully combined, conspired, and agreed to commit the following offenses against the United States:

a.   Knowing that the funds involved represented the proceeds of unlawful activity, and with the intent to promote the carrying on of specified unlawful activity, namely, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and interstate transportation of stolen property in violation of 18 U.S.C. § 2314, to conduct, attempt to conduct, and cause others to conduct financial transactions involving the proceeds of specified unlawful activity and affecting interstate or foreign commerce, all in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

b.   Knowing that the funds involved represented the proceeds of unlawful activity, and with the intent to conceal and disguise the nature, the location, the source, the

ownership, and the control of the proceeds of the specified
unlawful activity, namely, mail fraud in violation of 18 U.S.C.
§ 1341, wire fraud in violation of 18 U.S.C. § 1343, and
interstate transportation of stolen property in violation of 18
U.S.C. § 2314, to conduct, attempt to conduct, and cause others
to conduct financial transactions involving the proceeds of
specified unlawful activity and affecting interstate or foreign
commerce, all in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## THE MANNER AND MEANS OF THE CONSPIRACY

13.  In the course of the conspiracy, defendants
TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known
and unknown to the Grand Jury, would use funds obtained through
mail fraud, wire fraud, and interstate transportation of stolen
property to promote the scheme, including paying for initial
purchases of merchandise in order to create a good line of
credit with the victim companies and/or to entice the victim
companies to increase the line of credit provided to Impaq
Micro, paying for the storage and shipment of the goods
obtained from the victim companies, and transferring money
obtained from the fraud into the operating account for Impaq
Micro, to further their fraudulent scheme.

14.  In addition, defendants TABATABAI, MASJEDI, BENSHIAN,
RAHMANI, SABET, and others known and unknown to the Grand Jury,
would use multiple bank accounts and transfer money through the
various bank accounts with the intent to conceal and disguise
the nature, the location, the source, the ownership, and the
control of the proceeds of specified unlawful activity.

21

OVERT ACTS

15.   On or about the dates listed below, in furtherance of the conspiracy, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California and elsewhere:

The Purchase of Impaq Micro

a.   On May 14, 2004, defendants MASJEDI and BENSHIAN signed Highland International check number 1280, in the amount of $240,000.

b.   On May 14, 2004, defendants MASJEDI and BENSHIAN exchanged Highland International check number 1280, in the amount of $240,000, for a cashier's check in the amount of $240,000.

C.   On May 14, 2004, defendants MASJEDI and BENSHIAN provided a cashier's check in the amount of $240,000 to defendant RAHMANI for the purchase of Impaq Micro.

d.   On May 17, 2004, defendant RAHMANI deposited a cashier's check in the amount of $240,000 into his personal checking account.

e.   On May 17, 2004, defendant RAHMANI issued check number 22014 in the amount of $240,000 from his personal checking account, payable to M. Majidi, dba Majik Company.

f.   On May 17, 2004, an unindicted co-conspirator deposited the $240,000 check obtained from defendant RAHMANI into the bank account for Majik Company.

g.   On May 17, 2004, an unindicted co-conspirator, at

the direction of defendants TABATABAI and RAHMANI, wired
$240,000 from the Majik Company bank account to an escrow
account in the State of Georgia in order to purchase Impaq
Micro.

Payments to Vendors and Victims

h.   On June 18, 2004, defendants TABATABAI, MASJEDI,
BENSHIAN, RAHMANI, and SABET paid $1,000 to LACNY, a warehouse
in the Los Angeles area, for storing merchandise obtained from
the victim companies.

i.   On July 7, 2004, defendants TABATABAI, MASJEDI,
BENSHIAN, RAHMANI, and SABET paid $1,653.15 to BE Logistics for
the transportation of merchandise from one or more victim
companies.

j.   On July 14, 2004, defendants TABATABAI, MASJEDI,
BENSHIAN, RAHMANI, and SABET paid $1,000 to LACNY, a warehouse
in the Los Angeles area, for storing merchandise obtained from
the victim companies.

k.   On July 28, 2004, defendants TABATABAI, MASJEDI,
BENSHIAN, RAHMANI, and SABET paid $2,149.98 to BE Logistics for
the transportation of merchandise from one or more victim
companies.

l.   On August 2, 2004, defendants TABATABAI, MASJEDI,
BENSHIAN, RAHMANI, and SABET paid $2,626 to BE Logistics for
the transportation of merchandise from one or more victim
companies.

m.   On August 12, 2004, defendants TABATABAI, MASJEDI,
BENSHIAN, RAHMANI, and SABET paid $5,000 to BE Logistics for

23

1   the transportation of merchandise from one or more victim

2   companies.

3          n.   On August 16, 2004, defendants TABATABAI, MASJEDI,

4   BENSHIAN, RAHMANI, and SABET paid $35,000, in the form of a

5   cashier's check, to Amptron Industry, in the City of Industry,

6   California, for computer merchandise.

7          o.   On August 17, 2004, defendants TABATABAI, MASJEDI,

8   BENSHIAN, RAHMANI, and SABET paid $1,000 to LACNY, a warehouse

9   in the Los Angeles area, for storing merchandise obtained from

10   one or more victim companies.

11          p.   On August 26, 2004, defendants TABATABAI, MASJEDI,

12   BENSHIAN, RAHMANI, and SABET paid $1,400 to LACNY, a warehouse

13   in the Los Angeles area, for storing merchandise obtained from

14   one or more victim companies.

15         Transfers for Impaq Micro's Business Operations

16          q.   On June 22, 2004, defendants TABATABAI, MASJEDI,

17   BENSHIAN, RAHMANI, and SABET wire transferred $22,000 from the

18   account of Good Investments at Center Bank, in Los Angeles,

19   California, payable to Impaq Micro, in Atlanta, Georgia.

20          r.   On June 24, 2004, defendants TABATABAI, MASJEDI,

21   BENSHIAN, RAHMANI, and SABET wire transferred $27,000 from the

22   account of Good Investments at Center Bank, in Los Angeles,

23   California, payable to Impaq Micro, in Atlanta, Georgia.

24          s.   On July 1, 2004, defendants TABATABAI, MASJEDI,

25   BENSHIAN, RAHMANI, and SABET wire transferred $28,000 from the

26   account of Good Investments at Center Bank, in Los Angeles,

27   California, payable to Impaq Micro, in Atlanta, Georgia.

28

1          t.    On July 19, 2004, defendants TABATABAI, MASJEDI,

2     BENSHIAN, RAHMANI, and SABET wire transferred $71,000 from the

3     account of Good Investments at Center Bank, in Los Angeles,

4     California, payable to Impaq Micro, in Atlanta, Georgia.

5          u.    On July 22, 2004, defendants TABATABAI, MASJEDI,

6     BENSHIAN, RAHMANI, and SABET wire transferred $108,000 from the

7     account of Good Investments at Center Bank, in Los Angeles,

8     California, payable to Impaq Micro, in Atlanta, Georgia.

9               Transfer Of Proceeds Into Good Investments

10         v.    On August 24, 2004, defendant RAHMANI deposited a

11    check in the amount of $60,000 from the account of Impaq Micro

12    into the account for Good Investments.

13         w.    On August 24, 2004, defendant RAHMANI deposited a

14    check in the amount of $30,000 from the account of Impaq Micro

15    into the account for Good Investments.

16         x.    On September 2, 2004, defendant RAHMANI deposited a

17    check in the amount of $6,245.95 from the account of Impaq

18    Micro into the account for DND Company.

19             The Sale of Merchandise from the Victim Companies

20         y.    On July 17, 2004, defendants TABATABAI, MASJEDI,

21    BENSHIAN, RAHMANI, and SABET deposited a cashier's check,

22    obtained from Kinetic Technology in the amount of $71,520, into

23    the account of Good Investments at Center Bank, in Los Angeles,

24    California.

25         z.    On July 21, 2004, defendants TABATABAI, MASJEDI,

26    BENSHIAN, RAHMANI, and SABET deposited a cashier's check,

27    obtained from Kinetic Technology in the amount of $60,580, into

28

the account of Good Investments at Center Bank, in Los Angeles, California.

aa.  On July 21, 2004, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET deposited a cashier's check, obtained from Online Micro in the amount of $47,320, into the account of Good Investments at Center Bank, in Los Angeles, California.

bb.  On July 28, 2004, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET deposited a cashier's check, obtained from Kinetic Technology in the amount of $54,000, into the account of Good Investments at Center Bank, in Los Angeles, California.

cc.  On July 30, 2004, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET deposited a cashier's check, obtained from Online Micro in the amount of $54,900, into the account of Good Investments at Center Bank, in Los Angeles, California.

dd.  On August 5, 2004, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, and SABET deposited a cashier's check, obtained from Online Micro in the amount of $53,750, into the account of Good Investments at Center Bank, in Los Angeles, California.

COUNTS TWENTY-FOUR through THIRTY-NINE

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2]

(Money Laundering)

16.   The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

17.   On or about the dates listed below, in Los Angeles County, within the Central District of California and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, knowing that the financial transactions described below represented the proceeds of some form of unlawful activity, conducted, caused to be conducted, and aided, abetted, counseled, commanded, induced, and procured others to conduct the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, namely mail and wire fraud, and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 1341, 1343, and 2314:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| TWENTY-FOUR | 5/14/04 | Purchase of a cashier's check in the amount of $240,000 with a Highland International check in the amount of $240,000. |
| TWENTY-FIVE | 5/17/04 | Deposit of $240,000 cashier's check into a personal bank account in the name of defendant RAHMANI. |

27

| TWENTY-SIX | 5/17/04 | Deposit of $240,000 check from the account of defendant RAHMANI into the bank account of Majik Company. |
|---|---|---|
| TWENTY-SEVEN | 5/17/04 | Wire transfer of $240,000 from the Majik Company bank account at Center Bank in Los Angeles, California, to Miller's Brand Banking Company, in Lawrenceville, Georgia. |
| TWENTY-EIGHT | 6/24/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $23,550, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| TWENTY-NINE | 6/30/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $32,650, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY | 7/7/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $33,715, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-ONE | 7/17/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $71,520, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-TWO | 7/21/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $60,580, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-THREE | 7/21/04 | Deposit of a cashier's check, purchased by Online Micro in the amount of $47,320, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-FOUR | 7/28/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $54,000, into the account of Good Investments at Center Bank, in Los Angeles, California. |

28

| THIRTY-FIVE | 7/30/04 | Deposit of a cashier's check, purchased by Online Micro in the amount of $54,900, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-SIX | 8/4/04 | Deposit of a cashier's check, purchased by Online Micro in the amount of $57,590, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-SEVEN | 8/5/04 | Deposit of a cashier's check, purchased by Online Micro in the amount of $53,750, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-EIGHT | 8/10/04 | Deposit of a cashier's check, purchased by Kinetic Technology in the amount of $38,860, into the account of Good Investments at Center Bank, in Los Angeles, California. |
| THIRTY-NINE | 8/12/04 | Deposit of a cashier's check, purchased by Online Micro in the amount of $39,000, into the account of Good Investments at Center Bank, in Los Angeles, California. |

29

COUNTS FORTY through FIFTY-THREE

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2]

(Money Laundering)

18.   The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

19.   On or about the date set forth below, in Los Angeles County, within the Central District of California and elsewhere, defendants TABATABAI, MASJEDI, BENSHIAN, RAHMANI, SABET, and others known and unknown to the Grand Jury, knowing that the financial transaction described below represented the proceeds of some form of unlawful activity, conducted, caused to be conducted, and aided, abetted, counseled, commanded, induced, and procured others to conduct the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, namely mail and wire fraud, and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 1341, 1343, and 2314:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| FORTY | 6/18/04 | Payment of $1,000 from the account of Impaq Micro to LACNY in Los Angeles, California. |
| FORTY-ONE | 6/22/04 | Payment of $22,000 from the account of Good Investments to Impaq Micro, in Atlanta, Georgia. |
| FORTY-TWO | 6/24/04 | Payment of $27,000 from the account of Good Investments to Impaq Micro, in Atlanta, Georgia. |
| FORTY-THREE | 7/1/04 | Payment of $28,000 from the account of Good Investments to Impaq Micro, in Atlanta, Georgia. |

30

| FORTY-FOUR | 7/07/04 | Payment of $1,653.15 from the account of Impaq Micro to BE Logistics in Hawthorne, California. |
| FORTY-FIVE | 7/14/04 | Payment of $1,000 from the account of Impaq Micro to LACNY Freight Forwarders Inc. in Los Angeles, California. |
| FORTY-SIX | 7/19/04 | Payment of $71,000 from the account of Good Investments to Impaq Micro, in Atlanta, Georgia. |
| FORTY-SEVEN | 7/22/04 | Payment of $108,000 from the account of Good Investments to Impaq Micro, in Atlanta, Georgia. |
| FORTY-EIGHT | 7/28/04 | Payment of $2,149.98 from the account of Impaq Micro to BE Logistics in Hawthorne, California. |
| FORTY-NINE | 8/02/04 | Payment of $2,626 from the account of Impaq Micro to BE Logistics in Hawthorne, California. |
| FIFTY | 8/12/04 | Payment of $5,000 from the account of Impaq Micro to BE Logistics in Hawthorne, California. |
| FIFTY-ONE | 8/16/04 | Payment of $35,000, in the form of a cashier's check, to Amptron Industry of Industry, California |
| FIFTY-TWO | 8/17/04 | Payment of $1,000 from the account of Impaq Micro to LACNY in Los Angeles, California. |

31

| FIFTY-THREE | 8/26/04 | Payment of $1,400 from the account of Good Investments to LACNY in Los Angeles, California. |
|---|---|---|

A TRUE BILL

/S/
_____
Foreperson

DEBRA WONG YANG
United States Attorney

(Daniel S. Goodman, Deputy Chief,
Criminal Division, FOR:

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

EILEEN M. DECKER
Assistant United States Attorney
Deputy Chief, Organized Crime & Terrorism Section

32